**BLALOCK EDDY RANCH and Crystalaire Country Club Estates, California corporations, Plaintiffs–Appellees,**

v.

**MCI TELECOMMUNICATIONS CORPORATION, Defendant–Appellant.**

**No. 91–56542.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1992.

Submission Withdrawn May 1, 1992.

Resubmitted Nov. 30, 1992.

Decided Dec. 23, 1992.

---

Keith Zakarin and Kevin M. Fong, Pillsbury, Madison & Sutro, San Diego, CA, for defendant-appellant.

Donna R. Hecht and Gregory R. Smith, Irell & Manella, Los Angeles, CA, for plaintiffs-appellees.

Before HUG, and PREGERSON, Circuit Judges, and PECKHAM,* District Judge.

HUG, Circuit Judge:

This case concerns the validity of an injunction granted by the district court to restrain MCI from proceeding with an eminent domain action it filed in state court. In that action, MCI sought to obtain an easement for its fiber optic cable across the property of Blalock Eddy Ranch and Crystalaire Country Club Estates. The district court granted the injunction on the grounds that it was necessary to protect or effectuate its judgment in a prior action between the parties concerning the fiber optic cable. We conclude that the injunction violates the Anti–Injunction Act, 28 U.S.C. § 2283, and reverse.

The sole issue on this appeal is the validity of the injunction. Although the district court found MCI in contempt for violating its injunction in the prior ejectment action, it imposed no sanctions and, therefore, the court's ruling is not an appealable order. MCI also appeals the denial of its motion to vacate or stay the judgment in the prior action, however, it argued only that the judgment should have been stayed. Upon the motion of MCI, this court has entered an order staying the injunction pending the outcome of the appeal.

## I.

Blalock Eddy Ranch and Crystalaire Country Club (collectively "Blalock") granted an easement to the California Department of Water Resources ("DWR") for the purpose of conducting water along the California Aqueduct. The California Aqueduct is 400 miles long, approximately two miles of which crosses over Blalock's property. This portion of the Aqueduct consists of a concrete pipe 20 feet in diameter and 1–½ feet thick. To operate the aqueduct, DWR originally installed a copper cable that ran along the conduit's entire length. DWR, however, outgrew the capacity of this control system. Consequently, DWR negotiated with MCI, another public utility to replace the copper cable with a fiber optic cable that would increase the capacity and reliability of the aqueduct control system. DWR licensed MCI to run a fiber optic cable along the entire length of the California Aqueduct, including the two mile stretch over Blalock's property. Under the terms of the license agreement between MCI and DWR, a portion of the fiber optic cable was dedicated exclusively to DWR's use, and the remainder was to be used by MCI in its international telecommunications network. MCI installed a fiber optics cable ⅝″ in diameter for this purpose within the DWR easement.

Blalock filed suit against MCI in 1990 alleging claims for ejectment, trespass and declaratory relief. MCI removed the action to the United States District Court for the Southern District of California, answered the complaint and counterclaimed for declaratory relief, contending it was entitled to use DWR's easement over Blalock's property. In its answer MCI alleged, as one affirmative defense to Blalock's complaint, that its status as a public utility with the power of eminent domain barred Blalock's claims. However, MCI did not file a counterclaim seeking to condemn an easement permitting use of the fiber optic cable. Consequently, the sole issue litigated during the district court proceedings was whether the license agreement between MCI and DWR permitted MCI to use DWR's easement over Blalock's property.

On cross-motions for summary judgment, the district court entered a judgment in favor of Blalock on the ejectment and declaratory relief claims and denied MCI's counterclaim for declaratory relief, holding that the license agreement between MCI and DWR was outside the scope of the easement granted to DWR by Blalock. The district court enjoined MCI from further use of the fiber optic cable or the

---

* The Honorable Robert F. Peckham, Senior United States District Judge for the Northern District of California, sitting by designation.

easement. MCI did not appeal that judgment. MCI then initiated proceedings in state court to exercise its power of eminent domain and thereby acquire, by condemnation, an easement permitting the continued use of the fiber optic cable. In response, Blalock argued that the previous federal litigation was *res judicata* with regard to the state action. The state court, however, disagreed and issued an order of immediate possession to MCI, provisionally granting MCI an easement permitting use of the fiber optic cable pending a determination of reasonable compensation to be paid to Blalock.

█ Blalock then filed a motion in federal court seeking an injunction against the state court proceedings. On December 26, 1991, the district court issued an order and injunction granting Blalock's request. The district court concluded that the injunction was authorized by the Anti–Injunction Act. The district court order also found MCI in contempt from August 30, 1991, the date the federal judgment was entered, but imposed no sanctions against MCI. MCI appeals the December 26, 1991 injunction, and the contempt order. Since no sanctions were imposed against MCI, however, the finding of contempt is not a final, appealable order. *Steinert v. United States*, 571 F.2d 1105, 1107 (9th Cir.1978). Therefore, we will only review the validity of the injunction in this opinion.

## II.

In the order enjoining MCI from proceeding with the state eminent domain action, the district court noted that it had granted judgment for Blalock on its ejectment and declaratory relief claims and stated:

> Taking its cue from the parties' moving papers, the Court's analysis of Plaintiff's fifth claim for declaratory relief concerned itself solely with the validity of the MCI/DWR licensing agreement. However, the Court's ruling, like Plaintiff's request for declaratory relief, was broadly worded: "Therefore, the Court determines that Defendant has no right, title, estate, lien, or interest to use or possess (the Easement)." The Judgment which was subsequently entered on August 30, 1991 was equally broad in wording:

> Defendant has no past, present or future right, title, estate, lien, claim or interest to use or possess the (Easement) or any portion thereof or to use any fiber optic strands which are encompassed by the Fiber Optic Cable (the "FOC") heretofore installed by Defendant underground on the (Easement). Defendant may not use, and has no right to use, as part of Defendant's telecommunications system any fiber optic strands, or any other equipment, above, on, or under the Property.

The court also entered an injunction "in aid of a declaration of rights," which were the rights specified in the above quotation. The injunction prohibited MCI from further using the fiber optics cable or the easement. The focus of the injunction is on the rights that were declared in the judgment. The only matter determined in that litigation was whether MCI had the right to cross Blalock's land by virtue of its license with DWR to place cable within the DWR easement. The district court had found that the grant of easement to DWR was not an "exclusive easement" and was restricted to water pipelines and the appurtenances and uses necessary to operate and maintain them. It concluded that the portion of the license agreement between DWR and MCI that permitted MCI to use a portion of the fiber optics cable to serve the nationwide telephonic network was not authorized in Blalock's grant of easement to DWR.

The district court's declaration stated that "Defendant (MCI) *has* no present or future right" to use or possess any portion of the easement granted to DWR. The court's conclusion was that Blalock held a residual interest in the property crossed by the DWR easement, and MCI had no present or future right to use that property interest by crossing Blalock's land with the fiber optics cable. The declaration of rights that said that MCI *has* no present or future right in Blalock's property did not

state that MCI could not obtain such a right in the future; it simply stated in the present tense, that MCI did not have, at that time, any right whatsoever in the property. The injunction only implemented that determination. It enjoined MCI from using the fiber optics cable or the easement because it had no interest in the property or the easement. It did not foreclose MCI from obtaining an interest by eminent domain proceedings, which would then entitle it to use the portion of the fiber optics cable devoted to telecommunications. In acquiring an easement by eminent domain, MCI would then be required to compensate Blalock for damages to its property interest.

The state court order of immediate possession granted MCI a present right to an easement pursuant to California's eminent domain statutes. This supplied a legal basis for the presence of the fiber optic cable that did not exist at the time of the district court's declaration of rights, or the injunction implementing that declaration. Had MCI done nothing to obtain a present right to cross Blalock's land with the fiber optics cable, but continued to use a portion of the fiber optics cable for telecommunications, it would, indeed, have violated the injunction. Instead, MCI proceeded immediately to obtain, by lawful means, an easement of its own rather than relying on the license to use DWR's easement, which the district court had found to be invalid.

### III.

■■■ The fact that an injunction may issue under the Anti–Injunction Act does not mean that it must issue. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 151, 108 S.Ct. 1684, 1692, 100 L.Ed.2d 127 (1988). The decision to issue an injunction that does not violate the Anti–Injunction Act, therefore, is committed to the discretion of the district court. *See Golden v. Pacific Maritime Ass'n*, 786 F.2d 1425, 1426 (9th Cir.1986) (citing *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 752 (9th Cir.1982)). A district court abuses its discretion when it rests its conclusions on clearly erroneous factual find-

ings or on incorrect legal standards. *Id.* at 1427. However, whether an injunction may issue under the act is a question of law reviewed *de novo.* "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970).

The Anti–Injunction Act provides that:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by an act of Congress, or where necessary in the aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The third enumerated exception to the Anti–Injunction Act, permitting a federal court to enjoin state court proceedings to "protect or effectuate its judgments," is known as the relitigation exception.

### IV.

■■■ In determining whether the injunction in the instant case falls within the scope of the relitigation exception, we first examine whether there could be an actual conflict between the subsequent state court judgment and the prior federal judgment. If such a conflict is possible, then the district court could properly enjoin the state court proceedings. *See Chick Kam Choo*, 486 U.S. at 150–51, 108 S.Ct. at 1691–92. However, even if no actual conflict is possible, the injunction could still be proper if res judicata would bar the state court proceedings. *See Western Systems, Inc. v. Ulloa*, 958 F.2d 864, 871–72 (9th Cir.1992). Therefore, we must determine whether the affirmative defense raised by MCI serves as a res judicata bar to the subsequent state action. Finally, we must determine whether MCI's counterclaim stated a cause of action that embraced its eminent domain action and, thus, is a res judicata bar to the state action.

### A.

■ Our first inquiry is to determine whether there could be an actual conflict between a subsequent state court judgment and the prior federal judgment in the instant case. This analysis merely requires a strict application of *Chick Kam Choo*. In that case, the Supreme Court examined the scope of the relitigation exception and found that the federal injunction in that case was too broad because it included several potential claims that were not decided in federal court and therefore could not create an actual conflict between judgments.

The prior federal litigation in *Chick Kam Choo* had culminated in summary judgment on certain claims and dismissal of others. The Supreme Court held that the injunction exceeded the scope of the relitigation exception with regard to the claims that were dismissed by the district court. 486 U.S. at 148–49, 108 S.Ct. at 1690–91. Consequently, the case was remanded so that the district court could more narrowly tailor its injunction to permit the state court litigation of claims not actually decided by the federal court. *Id.* at 151, 108 S.Ct. at 1692.

In the instant case, we conclude that there could be no actual conflict between the prior federal judgment and the state court proceedings that were enjoined by the district court. As we have indicated, the declaration in the federal district court judgment, which was the basis for the protective injunction, only relates to the right MCI had at that time. Neither the declaration, nor the injunction implementing it, foreclose MCI from obtaining such a right in the future.

In *Chick Kam Choo*, the Supreme Court stated that the relitigation exception is " 'narrow and [is] not to be enlarged by loose statutory construction.' " 486 U.S. at 146, 108 S.Ct. at 1689 (quoting *Atlantic Coast Line R.R. Co. v. Locomotive Eng'rs*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970)). Furthermore,

> an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court.... [T]his prerequisite is strict and narrow. [The reviewing court must assess] the precise state of the record and what the earlier federal order *actually* said; it [does] not permit the District Court to render a *post hoc* judgment as to what the order was *intended* to say.

*Chick Kam Choo*, 486 U.S. at 148, 108 S.Ct. at 1690. Applying this language to the instant case, we conclude that there could be no actual conflict between any result from MCI's state court condemnation proceedings and the prior federal judgment holding that MCI has no interest in the subject property.

### B.

■ The second step in our analysis requires us to determine whether MCI's assertion of an affirmative defense is a res judicata bar to MCI's state court eminent domain proceedings. Recently, in *Western Systems, Inc.*, 958 F.2d at 870, we held that the relitigation exception is as broad as res judicata, recognizing that this differed from the holdings of several other circuits. In that case, the plaintiff in a former action was seeking to litigate, in a second action, a claim that could have been brought in the first action. We held that an injunction against the second action could properly be issued.

In this case, we are not dealing with a plaintiff that is seeking to bring a second cause of action. Rather, we are dealing with res judicata principles as they pertain to a defendant in foreclosing that defendant from relitigating an issue that was encompassed in the plaintiffs' cause of action. This is based upon a defense that the defendant either raised or could have raised to the plaintiffs' cause of action. Rather than res judicata, or claim preclusion, this is more accurately described as issue preclusion because the initial cause of action litigated was not defendant's cause of action, but plaintiffs' cause of action. The issue sought to be precluded is the defense that the defendant either did raise or could have raised. The claim involved is the plaintiffs' claim, not the defendant's.

In this case, Blalock contends that the federal judgment which holds that MCI *has* no present or future interest is res judicata as to MCI's ability *to obtain* a future interest by means of a state condemnation action. The principal reason is that, in answer to Blalock's complaint, MCI asserted an affirmative defense that Blalock's claims were barred because MCI "is a public utility with power of eminent domain for telecommunications purposes in the State of California." Exactly how the fact that MCI is a public utility with the power of condemnation could bar an action to determine whether it had an existing right to be within DWR's easement was never flushed out in the litigation. As the district court noted, this affirmative defense was ignored by the parties in the ultimate cross-motions for summary judgment.

In Blalock's Memorandum of Points and Authorities in support of its motion for summary judgment, Blalock clearly enunciated the cause of action involved.

> The crux of the present legal dispute is one straight forward issue: Did MCI lawfully acquire from DWR the right to install, operate and maintain MCI's international telecommunications system on plaintiffs' properties.[4]

(footnote in Points and Authorities.)

Footnote 4 of the Points and Authorities states in pertinent part:

> MCI admits that its sole basis for constructing and operating the Fiber System within the 1968 Easement is derived from DWR's alleged "authority to do the same" pursuant to the terms of the Easement.

MCI's theory of defense was that DWR had the right to apportion its easement to another public utility with the right of condemnation, which would be a savings to the general public and would not involve any additional detriment to the landowner. The affirmative defense in MCI's answer, is most sensibly viewed as a component of the argument that DWR could legally apportion its easement. This is the defense that was rejected by the district court on the grounds that the grant of easement to DWR did not authorize any apportionment to a use other than that associated with the water pipelines.

The issues framed by the complaint and the answer were as follows: Blalock contended that MCI did not have a right to utilize an easement on Blalock's property. MCI contended it did have such a right based on its license to an apportionment of DWR's easement because it was also a public utility with the right of condemnation. MCI could not have asserted the defense that it had acquired an easement of its own by eminent domain because it had not done so. That defense was unavailable to MCI, and was not asserted, nor could it have been asserted. Thus, on this basis, a subsequent eminent domain action was not precluded under the principles of res judicata, either as claim preclusion or issue preclusion.

### C.

Blalock also asserts that MCI's counterclaim for declaratory relief operated under the principles of res judicata to preclude the subsequent state eminent domain action. The counterclaim set forth the DWR easement, MCI's license agreement with DWR, and sought a declaration that MCI was entitled to remain within the DWR easement. There was no mention of eminent domain, nor any assertion that MCI was entitled to an easement of its own. If MCI's theory had prevailed, it had no need to obtain an easement of its own by eminent domain.

The resolution of MCI's counterclaim for declaratory relief decided the same issue involved in Blalock's claim for declaratory relief—that MCI did not have any present or future right to use Blalock's property by virtue of its license to use DWR's easement. It should be emphasized that *having* a present or future right to use someone's property is quite different from being able to obtain such a right in the future. The judgment provided that MCI did not, then, have a right to use Blalock's property, nor did it, at that time, have a right to use Blalock's property in the future. The judgment did not preclude MCI from obtaining such a right in the future. A person who does not have a right to use another's property at present or in the future,

can obviously obtain such a right in the future in any number of ways, including purchase, gift, inheritance, or eminent domain. In this case, MCI seeks to obtain such a right by eminent domain. The district court, in deciding MCI's counterclaim for declaratory relief, did not rule upon any claim for eminent domain.

Blalock contends, however, that the counterclaim for declaratory relief stated a cause of action that embraced its eminent domain claim. We have recognized four factors relevant to the determination of whether successive lawsuits involve a single cause of action.

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*International Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Aloha Airlines, Inc.*, 790 F.2d 727, 731 (9th Cir.), *cert. denied*, 479 U.S. 931, 107 S.Ct. 400, 93 L.Ed.2d 354 (1986).

In reviewing these factors, we conclude that the causes of action are distinct. (1) The rights or interests established in the prior federal judgment would not be destroyed or impaired by prosecution of the second action because the federal action determined that MCI had no right to have its fiber optic cable across Blalock's land based on an apportionment of DWR's easement. The subsequent state eminent domain action would have no bearing on that determination. (2) The same evidence would not be involved. In the federal action, the evidence principally concerned the nature of DWR's easement and the license agreement. In the eminent domain action, the evidence will concern the necessity to acquire the easement, the nature of the infringement, and the damages to Blalock's property. (3) The two suits do not involve infringement of the same right. The feder-

al action involved the infringement of Blalock's residual interest in DWR's easement. The eminent domain action involves the necessity of taking a property interest from Blalock and appropriately compensating him for it. (4) The transaction alleged in the counterclaim was the validity of MCI's license to an apportionment of DWR's easement. The transaction involved in the eminent domain action is the taking of Blalock's property in the public interest for fair compensation.

We conclude that MCI's cause of action seeking to declare that it was entitled to an apportionment of DWR's easement is distinct from the state cause of action seeking to establish MCI's own easement by eminent domain. The decision in the former did not serve as res judicata to preclude the latter.

### V.

We conclude that the injunction violates the Anti–Injunction Act and, therefore, reverse.

REVERSED.