# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF MONTANA, Department of
Environmental Quality,
*Plaintiff-Appellee,*

CITY OF LIVINGSTON; PRIVATE
PROPERTY OWNERS, Plaintiff in the
matter of The City of Livingston
v. BNSF Railway Company, et al.
Montana Sixth Judicial District
Court, Cause No. DV 07-141,
*Plaintiff-Intervenors-Appellees,*

v.

BNSF RAILWAY COMPANY,
*Defendant-Appellant,*

and

GLACIER PARK COMPANY,
*Defendant.*

No. 08-35667

D.C. No.
6:88-cv-00141-
DWM-RKS

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
August 5, 2009—Seattle, Washington

Filed November 1, 2010

Before: Harry Pregerson, John T. Noonan and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Pregerson

17993

## COUNSEL

Katherine M. Haque-Hausrath, Helena, Montana, for the plaintiff-appellee.

Mark M. Kovacich, Great Falls, Montana, for the intervenors.

John C. Berghoff, Jr., Chicago, Illinois, for the defendant-appellant.

## OPINION

PREGERSON, Circuit Judge:

In this appeal, we consider whether an exception to the Anti-Injunction Act, 28 U.S.C. § 2283, applies to a Montana state court proceeding stemming from facts related to an earlier federal proceeding, but involving distinct parties and claims. We hold that no exception applies, and that an injunction may not issue, and affirm the district court.

### Background

For roughly eighty years, BNSF Railway Company ("BNSF") and its predecessors in interest operated a railroad maintenance and fueling facility near Livingston, Montana. In 1988, the State of Montana ("the State") filed several federal and state law claims against BNSF in federal district court, including a claim under Montana's Comprehensive Environmental Cleanup and Responsibility Act ("CECRA"), Mont. Code Ann. § 75-10-705 *et seq.* The State alleged that diesel fuel and other chemicals contaminated groundwater, soil, and other natural resources beyond the boundaries of the maintenance facility.

In 1990, BNSF and the State entered into a Partial Consent Decree ("consent decree"). The consent decree required BNSF to conduct a remedial investigation, and laid out procedures by which the parties would eventually negotiate and implement a final remedy. Though the district court retained jurisdiction over the consent decree, the consent decree did not specify the remedy to be implemented. By its own terms, the consent decree did not apply to "a claim by a person other

than the parties to this Modified Partial Consent Decree." To this day, the State continues to pursue remediation under both the consent decree and Montana state environmental statutes.

In 2007, 152 property owners ("the Livingston plaintiffs") filed several claims against BNSF in Montana state court alleging contamination of private property and seeking, among other remedies, "investigation and restoration of real property." In Montana federal district court, BNSF moved to enjoin the Livingston plaintiffs' Montana state court "investigation and restoration" claim, arguing that an injunction was necessary to protect or effectuate the district court's prior judgment and would aid the district court's jurisdiction over the consent decree. The Livingston plaintiffs intervened and opposed the request. The federal district court concluded that the Anti-Injunction Act, 28 U.S.C. § 2283, applies, and denied the injunction. This timely appeal followed.

## *Discussion*

We have jurisdiction over the district court's order under 28 U.S.C. § 1291. Whether an injunction may issue under the Anti-Injunction Act is a question of law, which we review de novo. *Blalock Eddy Ranch v. MCI Telecomms. Corp.*, 982 F.2d 371, 375 (9th Cir. 1992).

**[1]** The Anti-Injunction Act states that federal courts "may not grant an injunction to stay proceedings in a state court except . . . where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Here, we must determine whether an injunction is necessary in aid of the district court's jurisdiction over the 1990 consent decree, or to protect the district court's judgment implementing the consent decree.[1] "Any doubts as to the propriety of a federal

---

[1]The "necessary in aid of" jurisdiction exception is similar to the "protect or effectuate" judgments exception. *See Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987). Accordingly, we do not conduct separate analyses here.

injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed . . . ." *Blalock*, 982 F.2d at 375 (citing *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)) (internal quotation marks omitted).

**[2]** The "exception to the Anti-Injunction Act permitting a federal court to enjoin state court proceedings to 'protect or effectuate its judgments[ ]' is known as the relitigation exception." *Blalock*, 982 F.2d at 375. We must first examine whether there could be a conflict between a state court judgment and the prior federal judgment. *Id.* If a conflict is possible, an injunction may issue. *Id.* (citing *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 150-51 (1988). A conflict is only possible, however, where the federal court has actually decided the claims or issues presented in the subsequent state action. *See Blalock*, 982 F.2d at 376. "[T]his prerequisite is strict and narrow." *Chick Kam Choo*, 486 U.S. at 148.

**[3]** Here, BNSF argues that the private property owners' investigation and restoration claim is identical to the State's earlier claim under Montana's CECRA in federal court. The Montana Supreme Court addressed, and rejected, this argument in *Sunburst School District No. 2 v. Texaco, Inc.*, 338 Mont. 259 (2007). In *Sunburst*, plaintiffs sought restoration damages after a gasoline refinery polluted soil and groundwater. *See Sunburst*, 338 Mont. at 259. The Montana Supreme Court held that the *Sunburst* plaintiffs' private interests differed from potential State claims under Montana's CECRA:

> CECRA's focus on cost effectiveness and limits on health-based standards differ from the factors to be considered in assessing damages under the common law. Nothing in CECRA preempts a common law claim that seeks to recover restoration damages to remediate contamination beyond the statute's health-based standards. We conclude that no conflict exists between [the Montana Department of Environmental

Quality]'s supervisory role under CECRA and resto-
ration damages awarded under the common law. We
further conclude that nothing in CECRA precludes a
common law claim by necessary implication.

*Sunburst,* 338 Mont. at 278.

BNSF argues that *Shammel v. Canyon Res. Corp.*, 338
Mont. 541 (2007), excludes "community" cleanups from the
common law claims protected in *Sunburst*. We disagree. *Sun-
burst* itself involved "community" cleanup of (1) a school sit-
uated upon public lands and (2) approximately ninety homes.[2]
*See Sunburst*, 338 Mont. at 263. The only potential distinction
between *Sunburst* and *Shammel* is whether the plaintiffs own
all of the property in need of restoration. *Shammel*, 338 Mont.
at 544. As the Montana Supreme Court held, this possible dif-
ference is "without significance," and has no bearing on the
private nature of the claims asserted. *Id*. *Sunburst* applies to
the Livingston plaintiffs' restoration claim brought here.

**[4]** Under *Sunburst*, the Livingston plaintiffs' claim is not
precluded by or identical to the State's earlier claim under
Montana's CECRA. Thus, because the State's CECRA claim
in federal court is distinct from the Livingston plaintiffs' cur-
rent claim in state court, the earlier federal action has not
decided the issues presented by the subsequent state claim,
and there can be no conflict.

**[5]** "[E]ven if no actual conflict is possible, [an] injunction
could still be proper if res judicata would bar the state court
proceedings." *Blalock*, 982 F.2d at 375. Res judicata applies
when there is "(1) an identity of claims, (2) a final judgment
on the merits, and (3) privity between parties." *Tahoe-Sierra*

---

[2]As the *Sunburst* court acknowledged, underground plumes of pollution
almost always cross property boundaries. *See Sunburst*, 338 Mont. at 272.
Any cleanup of such plumes could therefore be characterized as a "com-
munity" cleanup.

*Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). Having determined that the Livingston plaintiffs' claim is distinct from the State's CECRA claim, we have therefore also established that there is no identity of claims here. Accordingly, res judicata does not apply. Thus, we need not address the finality of the consent decree or whether there is privity between the State and the Livingston plaintiffs. In short, the Anti-Injunction Act controls.[3]

**AFFIRMED.**

---

[3]If an exception to the Anti-Injunction Act applied, we would review the district court's decision whether to issue an injunction for abuse of discretion. *California v. Randtron*, 284 F.3d 969, 974 (9th Cir. 2002). "The requirements for the issuance of a permanent injunction are (1) the likelihood of substantial and immediate irreparable injury, and (2) the inadequacy of remedies at law." *G.C. and K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1107 (9th Cir. 2003). We must defer to the district court's interpretation of a consent decree. *Randtron*, 284 F.3d at 976. Were we to reach the issue, we would conclude that the district court did not abuse its discretion in refusing to enjoin state proceedings.