*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DOMINIC'S RESTAURANT OF DAYTON, INC., fka
Dominic's Inc., dba Dominic's; DOMINIC'S
FOODS OF DAYTON, INC., d/b/a Anne Mantia's
Dominic's Italian Restaurant; ANNE B.
MANTIA,
    *Plaintiffs-Appellees* (10-3376 & 10-3377),

    v.

CHRISTIE L. MANTIA, et al.,
    *Defendants,*

REECE POWERS III,
    *Defendant-Appellant* (10-3376 & 10-3377),

SHIRLEY'S VILLAGE INN,
    *Non-Party-Appellant* (10-3377).

Nos. 10-3376/3377

> 

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:09-cv-131—Thomas M. Rose, District Judge.

Decided and Filed:  July 5, 2012

Before:  BATCHELDER, Chief Circuit Judge; McKEAGUE, Circuit Judge; and

QUIST, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** John J. Scaccia, SCACCIA & ASSOCIATES, LLC, Springboro, Ohio, for
Appellants.  James M. Morris, Sharon K. Morris, MORRIS & MORRIS, P.S.C.,
Lexington, Kentucky, for Appellees.

_____

[*]The Honorable Gordon J. Quist, United States District Judge for the Western District of
Michigan, sitting by designation.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Chief Judge.  Defendant Reece Powers[1] appeals the district court's decision to continue judicial proceedings against him (i.e., contempt proceedings) despite his filing of a petition for bankruptcy, which usually carries an automatic stay of judicial proceedings.  For the reasons stated by the district court, and reiterated herein, we AFFIRM the decision.

**I.**

In 1957, Dominic Mantia opened an Italian restaurant in Dayton, Ohio, and called it "Dominic's."  For the next 50 years, Dominic and his son and daughter-in-law, Dick and Anne Mantia, operated the restaurant.  Dominic and Dick have since died and the restaurant closed in 2007, but Anne continues to market sauces and other products as "Dominic's Foods of Dayton."

In 2007, Christie Mantia, Dominic Mantia's granddaughter, sold her interest in the original Dominic's business.  Christie then entered into a business arrangement to operate a restaurant with Powers and Harry Lee, a former chef at Dominic's Restaurant.  In their pre-opening publicity, Christie, Powers, and Lee promised to bring back the original Dominic's recipes.  They named the business "Dominic's Restaurant, Inc." and registered it with the Ohio Secretary of State under that name.

Dominic's Foods and Anne Mantia brought an action in federal district court raising claims of trademark infringement and trademark dilution under federal law, as well as state law claims of unfair practices and unfair competition, tortious interference with contract, conversion, misappropriation of business property, breach of contract,

_____

[1]Powers's attorney filed two separate appeals:  one on behalf of Powers (10-3376) and another including Shirley's Village Inn (10-3377).  We consolidated the two appeals.  Powers's attorney continues to represent both entities, but has not submitted separate briefing or argument on behalf of Shirley's Village Inn.  In the text of this opinion we refer only to defendant-appellant Powers, but this decision also applies to appellant Shirley's Village Inn.

fraudulent and/or negligent misrepresentation, and breach of implied covenant of good faith and fair dealing. The plaintiffs sought a temporary restraining order ("TRO"), a preliminary injunction, a permanent injunction, and damages. The district court issued a TRO directing the defendants to: (1) refrain from using the Dominic's name; (2) refrain from any commercial use of the Dominic's marks or confusingly similar marks; (3) refrain from false designation of Dominic's marks; and (4) immediately remove all graphics that depict the Dominic's marks or marks that are confusingly similar. The district court then scheduled a hearing on the plaintiffs' motion for preliminary injunction.

Almost immediately, the plaintiffs moved to hold the defendants in contempt, claiming that despite the TRO, the defendants had used the Dominic's name and logo, openly referred to the old Dominic's recipes, and used the name "Dominic's" on the bank account for the restaurant, on receipts, and on credit card charges.[2] Following a hearing, the district court concluded that the defendants had engaged in infringing behavior both before and after the TRO. The court revised and broadened the TRO to require defendants Powers and Lee "[t]o immediately cease and desist from operation of the Restaurant" and continued the TRO in effect pending the preliminary injunction hearing.

The plaintiffs filed a second motion for contempt almost immediately, claiming the defendants had not closed the restaurant as ordered. The district court denied that motion upon finding that Powers and Lee had since closed the restaurant and withdrawn registration of the Dominic's Restaurant name from the Ohio Secretary of State's registry. The court continued the TRO pending the preliminary injunction hearing and denied the defendants' request to modify the TRO to allow them to reopen as an Italian-American restaurant called "Duke's."

---

[2]The defendants had also ordered signs bearing the name Dominic's, though they did not use the signs. Apparently, the restaurant building bore a sign stating "Restaurant With No Name," or something to that effect.

Following the hearing, the district court granted the plaintiffs' request for preliminary injunction. Defendants Lee and Powers filed a pro se notice of appeal, which was ultimately dismissed for want of prosecution (09-3944). In a subsequent order, the district court awarded attorneys' fees to the plaintiffs for the cost of the contempt proceedings. Defendants' counsel filed a notice of appeal, which too was ultimately dismissed for want of prosecution (09-4153).

The preliminary injunction continued the TRO's ban on the Dominic's marks and name, and required the defendants to remove all graphics that were confusingly similar to the Dominic's marks. The preliminary injunction also enjoined the defendants from opening the restaurant "unless the restaurant uses the Duke's Golden Ox Steak House menu submitted [by the defendants] and only that menu. Should the [p]arties agree to a different menu, they may submit it to the [c]ourt for approval."

The plaintiffs soon filed another (third) motion for contempt, claiming that the defendants had unilaterally changed the menu and had added items "that raise serious question[s] about the affiliation with [p]laintiff's product[s]," i.e., Dominic's Foods' products. After offering the defendants an opportunity to submit revisions to the menu, but receiving none, the district court held that the defendants were in violation of the preliminary injunction and ordered them to cease operation of the restaurant. The court denied the defendants' motion to reconsider that order.

Meanwhile, in the midst of all this, the district court had established a discovery schedule. In December 2009, the plaintiffs moved for default judgment against the defendants based on the failure to comply with discovery deadlines, identify witnesses, or participate in a mandatory conference. The district court originally denied the motion, noting that "the Restaurant presumably remains closed," but later (January 2010) issued a show-cause order directing the defendants to show cause why a default judgment should not be entered. Correspondingly, the plaintiffs filed another (fourth) motion for contempt, based on the defendants' operation of the restaurant with an unapproved menu and an associated website that contained numerous references to Dominic's.

Defendant Powers responded to the show-cause order by asserting that he had provided the financial information and responded to the discovery requests. Powers also filed a suggestion of bankruptcy based on a Chapter 13 petition that he and his wife had filed jointly. Neither of the other defendants (Christie Mantia or Harry Lee) responded to the show-cause order. "Dominic's Restaurant, Inc." had by then been removed from the Secretary of State's registry and ceased to exist as a corporate entity.

On March 25, 2010, the district court granted default judgment against all three individual defendants (Mantia, Powers, and Lee). The court analyzed Powers's claim that the proceedings were automatically stayed by his bankruptcy filing and rejected that claim. The district court concluded that the stay does not apply to protect a debtor's tortious use of his property and, furthermore, while the stay would bar an assessment of damages, it would not bar injunctive relief. The district court granted the default judgment but set a hearing to determine the appropriate remedy, "recognizing that this [c]ourt will not award monetary damages against [the bankrupt] Powers."

In a separate order, the court granted the plaintiffs' renewed (fourth) motion for contempt and again enjoined operation of the restaurant. Powers filed a notice of appeal and an amended notice of appeal (10-3376 and 10-3377). On appeal, Powers insists that "[t]he sole issue presented in this case [is] whether the automatic bankruptcy stay should preclude further proceedings in contempt that are civil in nature." Apt.'s Br. at 2 (Nov. 18, 2010); Apt.'s Reply Br. at 5 (July 6, 2011).

After Powers had filed his notice of appeal, the bankruptcy trustee moved the bankruptcy court to dismiss the Chapter 13 proceedings or, alternatively, to convert to Chapter 7. In an agreed order, Powers and his wife dismissed the joint Chapter 13 petition without prejudice to filing another petition.[3] Two days later, Powers filed a voluntary Chapter 7 petition, which is pending.

---

[3]The plaintiffs moved this court to dismiss this appeal, arguing that Powers's dismissal of his Chapter 13 petition ended his bankruptcy proceedings and rendered this issue moot. A motions panel denied the motion. *Dominic's Rest. v. Mantia*, No. 10-3376/3377, Order (6th Cir. Mar. 18, 2011). Because Powers's Chapter 7 filing triggered the automatic stay provision, we find that this issue is not moot and decide it on the merits.

## II.

As a general rule, the filing of a bankruptcy petition operates to stay, among other things, the continuation of a judicial proceeding against the debtor that was commenced before the petition. *See* 11 U.S.C. § 362(a)(1); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 901 n.5 (6th Cir. 2009). But the automatic stay protection does not apply in all cases; there are statutory exemptions, and there are non-statutory exceptions. The court in which the judicial proceeding is pending — in this case, the district court below — has jurisdiction to decide whether the proceeding is subject to the stay. *See NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986).

Powers claims that the automatic bankruptcy stay protection applies to this case: the contempt claim at issue is a judicial proceeding against him, he is a bankruptcy debtor, and the plaintiffs commenced the tort action and ensuing contempt claim before he filed his bankruptcy petition. But the plaintiffs are neither creditors nor claimants to Powers's property.

The automatic bankruptcy stay "protects interests in a debtor's property, not tortious uses of that property by the debtor." *Larami Ltd. v. Yes! Entm't Corp.*, 244 B.R. 56, 60 (D.N.J. 2000) (quotation and citation omitted). The automatic stay provision "was intended to prevent interference with a bankruptcy court's orderly disposition of the property of the estate, it was not intended to preclude post-petition suits to enjoin unlawful conduct. If this section were read to prevent the injunctive relief [against mark infringement] sought here, bankrupt businesses which operated post-petition could violate [plaintiffs'] rights with impunity." *Id.*; *see also Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999) ("[T]he statutory stay of proceedings as to [defendant] did not free [defendant] of the contempt orders and the injunctions upon which the contempt was based, all of which were entered before [defendant] suggested bankruptcy.").

Put another way:

> It is within a court's inherent power to take whatever steps [are] necessary to ensure those persons within its power comply with its orders. [We] cannot conceive that Congress intended to strip [a] court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless.

*In re Rook*, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989) (editorial marks, quotation marks, and citation omitted); *see also In re Synergy Dev. Corp.*, 140 B.R. 958, 959 (Bankr. S.D.N.Y. 1992) ("Bankruptcy does not grant a debtor greater rights than those it would receive outside of bankruptcy.") (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).

The basic complaint in this case is that Powers (along with the other defendants) was infringing on the plaintiffs' trademarks and service marks. After issuing a first TRO enjoining Powers from using the plaintiffs' marks at his restaurant, the court found him in contempt of that TRO because he continued to do so, and issued a second TRO closing the restaurant. The court later issued a preliminary injunction allowing Powers to open the restaurant under certain conditions, but found him in contempt again because he continued to infringe on the marks and, therefore, closed the restaurant again. Upon reopening, Powers again infringed the plaintiffs' marks, on his menu and his website, so the court was presented with a fourth contempt motion. Determination of that motion is the judicial proceeding that Powers contends was stayed by his bankruptcy petition.

Because this matter involves Powers's use of the restaurant to commit a tort, specifically the tort of trademark and service mark infringement, application of the automatic stay would permit Powers to continue to commit this tort. Powers's commission of a tort is not protected by the Bankruptcy Code. *See Larami*, 244 B.R. at 60; *Seiko Epson*, 190 F.3d at 1364; *In re Rook*, 102 B.R. at 493. Therefore, Power's petition for bankruptcy does not stay this judicial proceeding.

**III.**

Based on the foregoing, we **AFFIRM** the judgment of the district court.