**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 15-1153**

———————

RDLG, LLC,

             Plaintiff - Appellee,

        v.

FRED M. LEONARD, JR., a/k/a Chip Leonard,

             Defendant – Appellant,

        and

RPM GROUP BROKERAGE, LLC; JESSICA LEWIS LEONARD; JASON
BENTON; NICK JAMES; DEXTER HUBBARD; GLENN G. GOLDAN; RPM
GROUP, LLC,

             Defendants.

———————

Appeal from the United States District Court for the Western
District of North Carolina, at Asheville.   Dennis L. Howell,
Magistrate Judge.  (1:10-cv-00204-DLH)

———————

Argued:  March 24, 2016               Decided:  May 23, 2016

———————

Before DUNCAN and THACKER, Circuit Judges, and DAVIS, Senior
Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.  Senior Judge Davis
wrote an opinion concurring in the judgment.

**ARGUED:** John C. Hunter, JOHN C. HUNTER, ATTORNEY AT LAW, Asheville, North Carolina, for Appellant. Ross Fulton, RAYBURN, COOPER & DURHAM, P.A., Charlotte, North Carolina, for Appellee.
**ON BRIEF:** Benjamin E. Shook, RAYBURN, COOPER & DURHAM, P.A., Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

RDLG, LLC ("RDLG") sued Fred M. Leonard, Jr. ("Leonard"), raising state law fraud claims. The district court[1] entered default judgment in RDLG's favor as a sanction for Leonard's misconduct during the pretrial conference. A jury then considered the proper amount of damages resulting from the default judgment and awarded RDLG $500,580.36.

Leonard now challenges the default judgment, asserting it violated his right to due process, and the damages verdict, contending the district court erred when instructing the jury. We disagree on both counts. The default judgment complied with due process, as it was imposed after the court provided Leonard both clear warning that the sanction would result from further misconduct and an opportunity to oppose imposition of the sanction. And Leonard's proposed jury instruction was properly rejected as irrelevant to the issue submitted to the jury. We, therefore, affirm the judgment below.

---

[1] The parties consented to the jurisdiction of a United States magistrate judge. See 28 U.S.C. § 636(c). As "the magistrate judge was acting for the court, . . . we . . . refer to [its] decisions as those of the district court." Lee-Thomas v. Prince George's Cty. Pub. Schs., 666 F.3d 244, 247 n.2 (4th Cir. 2012).

3

I.

A.

RDLG filed this diversity action in the United States District Court for the Western District of North Carolina in September of 2010. RDLG sued Leonard, a number of other individuals, and some related business entities under state law, alleging a pattern of fraudulent activity. The merits of the fraud claims are not at issue in this appeal.

The events underlying this appeal began on May 2, 2012, when attorneys Terri Lankford and Seth Neyhart entered appearances on behalf of Leonard and two business-entity defendants. Both attorneys were still representing the same three defendants on September 6, 2012, when the district court entered an order scheduling a pretrial conference for October 3.

On September 30, just two business days before the scheduled conference, Lankford and Neyhart filed a motion to continue the pretrial conference and a separate motion to withdraw as counsel. They explained that Leonard had not been communicating with Lankford[2] or paying for her services, so Lankford had informed Leonard that she would cease representation as of September 1. She had waited until

_____

[2] Neyhart's sole involvement to that point was that of local counsel. He had not communicated directly with Leonard prior to the morning of the pretrial conference.

September 30 to move to continue the pretrial conference because Leonard had represented to her that he intended to file for bankruptcy (on behalf of himself and the business entities) no later than September 28, 2012,[3] which would have obviated their involvement in the impending conference. Lankford added that she planned to be in Puerto Rico on October 3.

The district court denied the motion to continue and the motion to withdraw the next day -- October 1. The court ordered both Lankford and Neyhart to appear and represent Leonard and the related business entities at the pretrial conference and explained that either attorney's absence would result in a further order holding counsel in contempt.

On October 2, Lankford responded to the court's order by filing a declaration. The declaration expanded her explanation of how she came to request a continuance so close to the date of the pretrial conference. Lankford asserted that she did not receive the district court's October 1 order directing her to appear at the pretrial conference under pain of contempt until she had already left for Puerto Rico. But she assured the court that both Leonard and Neyhart would appear at the pretrial

---

[3] Neither Leonard nor his business organizations, in fact, filed for bankruptcy prior to the pretrial conference. Leonard did file for personal bankruptcy, but not until October 10, a week after the conference. The two business entities never filed for bankruptcy while this action was pending against them.

conference in person, while she would be available to appear via teleconference.

As promised, Leonard and Neyhart both appeared in person. However, the pretrial conference did not go well. Having anticipated that a bankruptcy stay would delay both the conference and the trial, Leonard and his counsel were not prepared for either.

Preparation aside, Neyhart worried that a potential conflict of interest had arisen. He reported to the court that Leonard was disputing some of Lankford's representations in her declaration and in the motion to continue. Neyhart asked the court for time to clarify the scope and consequences of any dispute between counsel and client. This request was denied.

During the pretrial conference, RDLG moved for sanctions, citing Leonard's lack of preparation. RDLG argued that entry of a default judgment would be appropriate. See Fed. R. Civ. P. 16(f)(1)(B), 37(b). Neyhart opposed, arguing a warning from the court was required prior to imposing default judgment as a sanction. The court took the motion under consideration. But prior to concluding the conference, it expressly stated on the record that it was considering striking Leonard's answer and entering default judgment.

Two days later, the district court imposed sanctions pursuant to Federal Rule of Civil Procedure 16(f) and the

6

court's inherent power, finding that "the actions of Defendants and their counsel at the pretrial conference and leading up [to] the conference made a mockery of the judicial process." RDLG, LLC v. RPM Grp., LLC, No. 1:10-cv-204, 2012 WL 4755669, at *7 (W.D.N.C. Oct. 5, 2012). Leonard was fined "$2500.00 pursuant to Rule 16(f)(1)(C)" and ordered to pay his fine "to the Clerk of Court within five (5) days of the entry of [the court's] Order." Id. at *5. The court warned, "failure . . . to comply with this Order within the time frame set forth in this Order will result in the Court striking the answer . . . and entering default judgment." Id. Neyhart was also assessed a $2,500 fine, and Lankford was assessed a $5,000 fine.

Separately, the district court raised the prospect of imposing additional sanctions against Lankford and Neyhart pursuant to Federal Rule of Civil Procedure 11 and directed Lankford and Neyhart "to Appear at a hearing at 10:00 a.m. on Thursday, October 11, 2012, . . . and SHOW CAUSE why they should not be further sanctioned." RDLG, LLC, 2012 WL 4755669, at *7.

October 10 -- the deadline for paying the assessed fines -- came and went without Leonard attempting to pay his fine. Instead, he filed for personal bankruptcy.

On the other hand, Lankford and Neyhart paid their fines on time. They also appeared at the Rule 11 hearing on October 11 as directed. Leonard, who had not been ordered to

7

attend the hearing, chose not to attend. Lankford and Neyhart both presented evidence at the show cause hearing.

The court decided no additional sanctions should be imposed on the two attorneys. It then turned to the previously imposed Rule 16 sanction, which Leonard had failed to pay. That failure, the district court decided, warranted striking Leonard's answer and entering default judgment against him. The court reasoned, "It's my belief that even though he's filed bankruptcy, the court ordered sanctions are not excusable . . . . [I]t was [Leonard] who plotted and schemed to cause a delay and continuance of this matter and to cause the Court difficulty in trying to administer this case and prepare it for trial." J.A. 204-05.[4]

The court followed up with a written order on October 24. The court recounted that its October 5 order cautioned that failure to pay any assessed fine would result in default. "Despite this warning," the court observed, Leonard "failed to comply with the Court's Order." J.A. 211. The court then found Leonard more blameworthy than his attorneys, concluding, "[Leonard] manipulated counsel" and "undermined counsel's ability to prepare for the Pretrial Conference and for the

---

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

trial." Id. at 211-12. The court determined sanctions less drastic than default judgment "would be of no avail in this matter." Id. at 212.

B.

The default judgment resolved the issue of liability but did not set an amount of damages. That determination required a jury trial, which began on January 12, 2015.[5]

At trial, Leonard requested that the jury be instructed, "Actual damages recoverable by the plaintiff for fraudulent misrepresentation are limited to the amount of money, property, services, or credit obtained by defendant from plaintiff by means of defendant's fraudulent misrepresentations." J.A. 243. The court declined to do so, and the jury subsequently returned a verdict for $500,580.36 in damages. The district court entered judgment accordingly. This timely appeal followed.

II.

Leonard challenges both the default judgment and the damages jury instruction. We begin with the argument that the entry of default judgment violated his due process rights.

---

[5] The case was stayed due to Leonard's bankruptcy for much of the period between the October 2012 pretrial conference and January 2015 damages trial.

9

A.

Normally, "[w]e review the district court's grant of sanctions under [Federal] Rule [of Civil Procedure] 37, including the imposition of a default judgment, for abuse of discretion."[6] Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998); see also Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976) (per curiam). "In the case of default, the 'range of discretion is more narrow' than when a court imposes less severe sanctions." Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40 (4th Cir. 1995) (quoting Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 503 (4th Cir. 1977)).

Leonard is not challenging whether the district court exceeded the bounds of its discretion, though. Rather, Leonard contends that he is entitled to relief from the sanction because he "had neither notice nor a meaningful opportunity to respond

---

[6] The district court's orders sanctioning Leonard refer to Federal Rule of Civil Procedure 16, not Rule 37. Rule 16 authorizes a district court to sanction a party who is unprepared to participate in a pretrial conference by "issu[ing] any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)." Fed. R. Civ. P. 16(f)(1). Rule 37(b)(2)(A)(iii) authorizes the court to "strik[e] pleadings in whole or in part," and Rule 37(b)(2)(A)(vi) authorizes "rendering a default judgment against the disobedient party." So while the district court referred to its authorization to order default pursuant to Rule 16, the ultimate source of that authorization is Rule 37. See Rabb v. Amatex Corp., 769 F.2d 996, 999-1000 (4th Cir. 1985).

10

to the allegations leveled against him prior to the court imposing" the default judgment. Leonard's Br. 24.

We agree that there are due-process-based limits on a court's power to sanction through default judgment. "[T]he provisions of the Fifth Amendment[, which provide] that no person shall be deprived of property without due process of law," impose "constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers, 357 U.S. 197, 209 (1958). Accordingly, a default judgment generally may not be entered as a sanction "without first giving notice of . . . intent to do so and without affording an opportunity for a hearing." Ford v. Alfaro, 785 F.2d 835, 840 (9th Cir. 1986).

But Leonard was provided ample notice and hearing in this case. Prior to imposing the sanction at issue, the district court issued both oral and written warnings that continued recalcitrance would result in default judgment. At the pretrial conference, the court notified the parties that it was considering "strik[ing] the answer . . . and rul[ing] in default." J.A. 118. Moreover, the court's October 5 order could not have been more clear, warning, "failure . . . to

11

comply . . . will result in . . . default judgment." RDLG, LLC v. RPM Grp., LLC, No. 1:10-cv-204, 2012 WL 4755669, at *5 (W.D.N.C. Oct. 5, 2012) (emphasis supplied). Additionally, the district court heard oral argument about potential sanctions at a pretrial conference, which Leonard attended.

Such process was constitutionally adequate. And even if it were not, Leonard fails to demonstrate that he was prejudiced by any violation, so he is not entitled to relief on appeal. We discuss the adequacy of the process employed by the district court and Leonard's inability to show prejudice in turn.

B.

In this circuit, we "requir[e] explicit and clear notice to" parties "when their failure to meet the . . . conditions [of a court order] will" preclude their right to adjudication on the merits. Choice Hotels Int'l, Inc. v. Goodwin & Boone, 11 F.3d 469, 471 n.2 (4th Cir. 1993); see also Hathcock, 53 F.3d at 40 ("[T]his court has emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction."); Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 n.2 (4th Cir. 1987) ("[The] fact is that in National Hockey League[ v. Metropolitan Hockey Club, Inc.], as well as in Rabb[ v. Amatex Corporation, 769 F.2d 996 (4th Cir. 1985)], the district court explicitly

12

warned the defaulting party in advance of the consequence of default, which was dismissal. No such warning was given in this case; had there been, another case would be presented." (citations omitted)). When provided, such notice is undoubtedly constitutionally adequate. See Link v. Wabash R.R., 370 U.S. 626, 632-33 (1962).

Leonard received the requisite "explicit and clear notice" in this case. Choice Hotels, 11 F.3d at 471 n.2. Indeed, he received an unusually clear and explicit warning. First, he was present at the October 3, 2012 pretrial conference when the district court announced, "I may strike the answer in this case and rule in default." J.A. 118. Second, Leonard does not dispute that he received notice of the court's follow-on October 5, 2012 order, which warns, "The failure of [Leonard] or counsel to comply with this Order within the time frame set forth in this Order will result in the Court striking the answer of [Leonard] and entering default judgment against [him] . . . ." RDLG, LLC, 2012 WL 4755669, at *5 (emphasis supplied). Indeed, the warning was repeated twice. See id. at *7 ("The Court, however, warns [Leonard] that any future dilatory conduct will result in the Court striking [his] Answer[] and entering default judgment against [him]." (emphasis in original)); id. at *8 ("The failure of [Leonard] or counsel to comply with this Order within the time frame set forth in

13

this Order will result in the Court striking the answer of [Leonard] and entering default judgment against [him] . . . .").

In Rabb v. Amatex Corporation, we upheld a sanction of dismissal against a due process challenge because "counsel[] conceded full awareness of and utter disregard for the district court's discovery timetable set forth in the pre-trial order." 769 F.2d 996, 1000 (4th Cir. 1985). The instant case is even more clear. Here, the order Leonard was fully aware of -- and utterly disregarded -- specifically threatened default judgment. Three times. That is far more than enough to accord Leonard constitutionally adequate notice.

C.

Leonard was also provided an adequate opportunity to be heard.

"[N]ot . . . every [dismissal] order entered without . . . a preliminary adversary hearing offends due process." Link, 370 U.S. at 632. Following Link, other circuits have expressly held that a court need not hold an oral hearing before entering a default judgment sanction. See FDIC v. Daily, 973 F.2d 1525, 1531 (10th Cir. 1992) (affirming a default judgment sanction despite the lack of oral hearing because "[t]he right to respond does not necessarily require an adversarial, evidentiary hearing"); Spiller v. U.S.V. Labs., Inc., 842 F.2d 535, 538 (1st Cir. 1988) ("Lack of a hearing does

14

not offend due process where the plaintiff had ample warning of the consequences of his failure to comply with court orders.").

We need not go that far today, though, because Leonard was permitted, through counsel, to oppose RDLG's motion for default judgment. At the pretrial conference, Neyhart argued in opposition to the motion and, in fact, convinced the court that default judgment should not be entered without first warning Leonard that it could result from further noncompliance.

There is no question that this hearing was adequate. Like notice, "[t]he adequacy of . . . hearing . . . turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." Link, 370 U.S. at 632. As discussed, as between the pretrial conference and the October 5 order, it is abundantly clear that Leonard had knowledge of the consequences of refusing to pay the court-imposed fine. No further hearing was necessary.

Leonard concedes as much. At oral argument, his counsel agreed there would have been no violation if, at the October 11 hearing, the district court had simply entered default judgment as a sanction for Leonard's noncompliance. See Oral Argument at 3:16–3:34, RDLG, LLC v. Fred M. Leonard, Jr., No. 15-1153 (Mar. 24, 2016), available at http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-

15

arguments ("Had the magistrate judge wanted to find [Leonard] in default for not paying that $2,500, he could have done so, in my opinion, without any further hearing into [Leonard's] conduct, and he could have done it essentially with a one-sentence order.").

D.

Leonard nevertheless contends that his right to due process was violated because he lacked notice that his failure to pay his fine would be discussed at the October 11 hearing. That hearing was set to address potential Rule 11 sanctions for Leonard's attorneys, but the district court proceeded further, raising Leonard's failure to pay, and then, according to Leonard, relying on information drawn from the October 11 hearing when ordering default judgment. The court, for example, ordered the Rule 11 hearing in part because it "ha[d] serious concern regarding the factual ac[c]uracy of . . . statements in [Lankford's] Declaration and pleadings." RDLG, LLC, 2012 WL 4755669, at *7. After considering the testimony Lankford gave at the hearing, however, the district court relied on those same documents as credible evidence supporting entry of default judgment against Leonard, observing, "From the statements of Ms. Lankford, in her declaration, it was [Leonard] who plotted and schemed to cause a delay and continuance of this matter and to cause the Court difficulty in trying to administer this case and

16

prepare it for trial." J.A. 205. Leonard maintains that reliance on findings and credibility assessments made in his absence violates due process.

But having conceded that, consistent with due process, the district court "could have [entered default judgment] essentially with a one-sentence order," Oral Argument at 3:23–3:34, and having neglected to identify any evidence suggesting that the district court's findings would have been different had Leonard attended and testified at the October 11 hearing, Leonard necessarily concedes that any error is harmless. Even if the court's appeal to additional findings constituted a due process violation, the violation did not prejudice Leonard if the findings were neither material to the determination he seeks to undo nor incorrect. See Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad., 551 U.S. 291, 303-04 (2007) (holding that any due process violation arising from an athletic association's closed-door discussion with investigators after a disciplinary hearing was "harmless beyond a reasonable doubt" where the punished school "identified nothing the investigators shared with the board that [the school] did not already know" and "g[ave] no inkling of what" would have changed had the investigators testified at the open hearing and been subject to cross-examination).

And if Leonard cannot show prejudice, his argument cannot succeed. Where a sanctioned party "has not made any showing of any possible prejudice[,] . . . failure to afford . . . notice and hearing before imposition of the sanction [i]s harmless error." Ford, 785 F.2d at 840. Here, there is no indication that a show cause hearing, Leonard's attendance at the October 11 hearing, or any additional notice and hearing would have had any effect on the district court's decision to enter default judgment. Rather, the essential facts are undisputed: Leonard willfully defied the initial sanctions order, knowing that default judgment would result. "A party who flouts such orders does so at his peril." Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 73 (2d Cir. 1988). And no matter what Leonard would say in an additional hearing, it is beyond dispute that he willfully flouted a court order of which he was well aware. He is not entitled to relief from the consequences of that choice.

## III.

We turn next to the award of damages. Leonard contends that the damages verdict must be vacated because the district court erred when instructing the jury. Again, we disagree.

18

A.

"We review a district court's 'decision to give (or not give) a jury instruction and the content of an instruction . . . for abuse of discretion.'" United States ex rel. Drakeford v. Tuomey, 792 F.3d 364, 382 (4th Cir. 2015) (alteration in original) (quoting United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992)). Reversal is appropriate "only when the requested instruction (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired that party's ability to make its case." Id. (quoting Noel v. Artson, 641 F.3d 580, 586 (4th Cir. 2011)).

B.

Reversal is not appropriate here because Leonard's proposed instruction was not relevant to the issue submitted to the jury. Irrelevant instructions do not, by definition, "deal[] with some point in the trial so important, that failure to give [them] seriously impair[s] [a] party's ability to make its case." Tuomey, 792 F.3d at 382 (alterations supplied) (quoting Noel, 641 F.3d at 586). Rather, "no valid objection" lies when a court refuses instructions that are "irrelevant and immaterial . . . to the ground upon which the case was placed

19

before the jury." Brown v. Tarkington, 70 U.S. (3 Wall.) 377, 381 (1865).

Leonard asked the district court to instruct the jury that damages must be "limited to the amount of money, property, services, or credit obtained by [Leonard] from [RDLG] by means of [Leonard]'s fraudulent misrepresentations." J.A. 243. This instruction was apparently adapted from In re Rountree, 478 F.3d 215 (4th Cir. 2007), an opinion in which we decided whether a tort judgment was excepted from discharge in Chapter 7 bankruptcy by 11 U.S.C. § 523(a)(2)(A). See id. at 219-23. Rountree dealt entirely with federal bankruptcy law. The limitation set forth in Leonard's proposed jury instruction describes his interpretation of a limitation to the reach of the fraud exception provided in the bankruptcy code.

No issue of federal bankruptcy law, however, was submitted to Leonard's jury. Rather, the jury was tasked with deciding the extent to which he was liable to RDLG pursuant to the state law causes of action alleged in this diversity suit. And while "the issue of nondischargeability" addressed in Rountree is "a matter of federal law governed by the . . . Bankruptcy Code," the question whether a valid debt exists "is determined by rules of state law." Grogan v. Garner, 498 U.S. 279, 283-84 (1991). The question presented to the jury -- whether and how much Leonard is indebted to RDLG pursuant to

20

North Carolina law -- thus remains a question of state law despite Leonard's collateral bankruptcy proceedings. Therefore, his proposed instruction about the federal dischargeability question was simply irrelevant.

The question whether Leonard's judgment debt is dischargeable is properly directed to the court overseeing his bankruptcy. Indeed, Leonard did present his Rountree argument there, and it was rejected. See In re Leonard, No. 15-5452, 2016 WL 1178649, at *7 (6th Cir. Mar. 28, 2016) (unpublished). That decision was appealed to (and affirmed by) the Sixth Circuit. See id. It cannot be challenged again here.

IV.

The district court's decision to enter default judgment as a sanction did not violate Leonard's right to due process, and Leonard's proposed jury instruction was properly refused. Accordingly, the judgment of the district court is

AFFIRMED.

21

DAVIS, Senior Circuit Judge, concurring in the judgment:

This case is a closer call for me than it is for my friends in the majority. I am somewhat puzzled by the manner in which the district court sought to vindicate the court's interest in maintaining appropriate supervision and control over the workflow in the busy United States District Court for the Western District of North Carolina.

In addition to ordering that Leonard and his counsel pay the plaintiff's attorney's fees in preparing for and attending the pretrial conference, the court further sanctioned Leonard and his counsel for failing to prepare for the pre-trial conference by imposing a monetary penalty payable to the court. Thereafter, with its crosshairs fixed on Leonard's counsel, the district court convened a hearing concerning the imposition of further sanctions on Leonard's counsel under Federal Rule of Civil Procedure 11, which Leonard himself was not specifically ordered to attend. Then, in Leonard's absence, and in partial reliance on the statements of his erstwhile counsel (coupled with Leonard's failure to timely pay the fine previously imposed), the court switched its focus and entered an order of default against Leonard. Ultimately, after a jury considered solely damages evidence (but not evidence bearing on liability), it returned a verdict in excess of half a million dollars in favor of the plaintiff against Leonard. In my view, these

22

procedural machinations skirt the border of due process, even for a litigant as disreputable as Leonard, who clearly manipulated his own counsel, his adversary and its counsel, and the district court, alike.

Manifestly, the district court would have been wise to have built a more convincing record to explicate the appropriateness of the ultimate sanction of default by affording Leonard an opportunity to explain or justify his failure to pay the fine and why something short of default would have been a more appropriate sanction. Indeed, the usual course of action in such circumstances is to hold a show cause hearing. I am constrained, nonetheless, under the totality of the circumstances shown by the record, to join in the judgment affirming the district court.